## JENNIE E. WARREN v. PETER CARPENTER.

*Fraudulent conveyances—Husband and wife—Instructions to jury.*

1. The error committed in refusing a request to charge is not cured by an instruction which is so far argumentative as to be well calculated to impress upon the jury the views of the trial judge upon the question of fact involved in the request.

2. Where, on the trial of an action of replevin brought by a wife to recover property seized under an execution against her husband, he testifies that a portion of the property had belonged to the wife since its original purchase, and that he transferred the remainder to her some years before the trial for a valuable consideration, and said transfer is claimed by the defendant to have been fraudulent as to creditors, it is error to refuse to instruct the jury, on the request of the defendant, that in determining the question of the wife's ownership of the property they are not bound to accept and believe the husband's statement in reference to the transfer, but should consider, in connection with his evidence, that of defendant's witnesses who have testified as to statements made by the wife with regard to such ownership at the time the levy was made, as well as all the other evidence and circumstances in the case bearing upon the question of ownership.

3. It is error to instruct the jury in such a case that whether the husband acted right or wrong (in making the transfer) makes no difference with the rights of the wife, and that, if she is entitled to the ownership of the property, their verdict should be for her, notwithstanding anything the husband may have done.

4. Where the record shows that upon some points, of more or less importance, in the testimony of a witness, he is disputed, complaint is justly made of an instruction that his testimony is uncontradicted.

Error to Bay. (Cobb, J.) Submitted on briefs January 3, 1894. Decided March 20, 1894.

Replevin. Defendant brings error. Reversed. The facts are stated in the opinion.

*J. L. Stoddard,* for appellant.

*T. A. E. & J. C. Weadock,* for plaintiff.

MONTGOMERY, J. Defendant, acting as constable, levied upon a quantity of household furniture by virtue of an execution against Byron E. Warren, and commenced making an inventory of the property. Before he had completed the inventory, the plaintiff brought this action of replevin, claiming title to the property.

Plaintiff called as a witness Byron E. Warren, who testified that some articles of the furniture had been plaintiff's from the time when they were originally purchased, and that the remainder was transferred to her by him three or four years before the trial, in consideration of an agreement on her part to transfer to him 30 shares of stock in the First National Bank of Bay City.

The defendant claimed that the pretended transfer of the property was never in fact made, or, if made, was a sham, and sought to establish this claim by the cross-examination of Warren, and by the testimony of the witnesses who were present when the levy was made, who testified to statements made by Mrs. Warren wholly inconsistent with her present claim of ownership.

The jury found a verdict for the plaintiff, and defendant appeals, alleging numerous errors. We shall consider those which are likely to arise upon a new trial.

The defendant asked an instruction as follows:

"The question of ownership of the property in dispute is a question of fact for you to determine; and in determining that question you are not bound to accept and believe the statement made by Mr. Warren in reference to transfer of the property from him to his wife, the plaintiff, but you are to take into consideration, in connection with his evidence, the evidence of the witnesses who have testified as to statements made by Mrs. Warren with regard to the ownership of the property at the time the levy was made, as well as all the other evidence and circumstances in the case bearing upon the question of ownership."

This was refused. We think the defendant was entitled to have this instruction given to the jury. It was very clearly correct in law, and we do not find that the circuit judge covered the ground in any proper way in his general instructions. He charged the jury as follows:

"Defendant comes in and claims that it [the transfer] never took place, or that it was not an honest or a valid transfer; that it was a transfer that was not real between the parties, but simply designed to have a form of sale, while the true intent was to get the title of the property away from Mr. Warren, so that it might not be liable to stand for debts of Mr. Warren,—in other words, a sham proceeding. Now, that is a fraud upon Mr. Warren's creditors, and a fraud is something that vitiates all transfers; that is, all parties can have it set aside. But fraud is something that is not likely [lightly?] to be presumed. You can't say that a person is guilty of fraud unless you find the fraud proved, and are really satisfied by a preponderance of evidence. Now, do you find that there is evidence, satisfactory to your mind, that such sale was a sham sale."

Another portion of the charge is as follows:

"The contention here is that this— I will repeat it; that is, that transfer was a fraudulent transaction; and the reason they say it is, is so much was given by him to her for what he got in return. But, if he was solvent at that time, it makes no difference; that is sufficient,—ability to pay all he owes; and he could make a transfer of this

kind. He can let it go to his wife for much less than it was worth. And that brings up the question whether Mr. Warren was solvent at the time this transfer was made, on this day about the beginning of 1890. I believe no witness has testified that Mr. Warren was insolvent at that time, and there is no testimony that he was."

And again, referring to the statements alleged to have been made by Mrs. Warren, the instructions were as follows:

"It is also stated here that Mrs. Warren, at the time this levy was made, when Mr. Carpenter was in the house, that she said to several parties, 'That is Mr. Warren's property;' and, if that is so, you should take it into consideration. What did she mean by saying so? Would she go and tell a party who was there, interfering with the property, that it was not hers, if it was hers? Did she say it in the first place? You should find whether she did. But, if she did say so, has there been any reasonable explanation offered with the theory that she was the owner? It may be that the woman was in some degree of excitement. She may have said something she did not mean to say, or something that some one, in the excitement of the moment, thought she did say. I simply mention these things to you that you may have your attention called to it, if you find she did say that. If you find she didn't say that, then, of course, you have nothing more to consider in relation to that particular point; but, if she did say it, then you are to look and see whether, notwithstanding she said that, she was the owner, because, if she was the owner, the mere fact of her saying that at that time she was not the owner does not debar her from claiming the title."

We think that, so far from curing the error committed in refusing defendant's request, the instruction is so far argumentative as to be well calculated to impress the views of the trial judge upon the jury upon the question of fact.

The court further instructed the jury as follows:

"Considerable criticism has been made on the actions

and conduct of Mr. Warren. I do not know what you will think about that. That goes to his credibility as a witness,—so far as the criticisms are borne out by the evidence in the case, it goes to his credibility as a witness. But whether Mr. Warren has acted right or wrong makes no difference with the rights of his wife. If she is entitled to the rights in that property, she is plaintiff, and his relation is only as a witness; and, if she is entitled to the ownership of that property, then your verdict should be for her, notwithstanding anything that Mr. Warren may have done."

While the statements in this instruction are, in the abstract, true, that the rights of Mrs. Warren alone are involved, still it is of some importance to the issue as to whether Mr. Warren had acted right or wrong in the making of the transfer in question. Two facts were essential to make the defense that the transfer was in fraud of creditors. One was that Mr. Warren had acted wrong, namely, that he had attempted a fraud upon creditors, and the other was that Mrs. Warren was cognizant of the fraud when she accepted the transfer, and participated in it. In relation to the first of the alleged facts, Mr. Warren's relation to the transaction was not alone that of a witness, but of an alleged actor as well.

One other instruction should be referred to. The court charged the jury as follows:

"Now, a good deal is going to depend on the matter of credibility of witnesses in this case. Mr. Warren has given, however, his testimony, and it is disputed in the argument on every point, although there is no testimony to contradict it; and Mr. Warren may be treated as an interested party in the case, because his wife is interested, and it may affect him,—to give him an interest; and therefore you are to scan his testimony as an interested witness."

Complaint is made, and we think justly, to that portion of the instruction which states to the jury that there was no testimony to contradict the testimony given by Mr. Warren. The record shows that upon some points of his

testimony, of more or less importance, he was disputed. A number of witnesses were called to contradict him upon minor points, and the circuit judge was therefore not justified in the statement made.

For the errors pointed out, the judgment will be reversed, with costs, and a new trial ordered.

The other Justices concurred.